UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD R. M.,[1]

                           Plaintiff,

             v.

FRANK BISIGNANO,
Commissioner of Social Security,

                           Defendant.

Case No. 5:25-cv-433-MAR

MEMORANDUM AND ORDER

Plaintiff Richard M. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his applications for Title II Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c).

For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## **PROCEDURAL HISTORY**

On August 17, 2022 Plaintiff filed his application for SSI and DIB alleging a disability onset beginning May 1, 2020.  Administrative Record ("AR") at 260-264.  Plaintiff's claim was denied at the initial and reconsideration levels, and on May 10, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 189.  A hearing was held on February 28, 2024.  Id. at 44–80.  In a decision on April 9, 2024, the ALJ denied Plaintiff's claims.  Id. at 14–38.

Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council.  Id. at 7–11.  Subsequently, the Appeals Counsel denied the request and affirmed the ALJ's decision.  Id. at 1–6.

Thereafter, on February 15, 2025, Plaintiff filed a case in the Central District of California. ECF Docket No. ("Dkt.") 1.  This matter is before the Court after both parties consented to proceed before a Magistrate Judge, in accordance with 28 U.S.C. § 636(c). Dkts. 5–7, 17.

# II.

## **PLAINTIFF'S BACKGROUND**

Plaintiff was thirty-eight years old on the alleged onset date and forty-two years old at the time of the hearing.[2]  AR at 294, 44, 36.  Plaintiff has a high school education and completed trade school.  AR at 298–99.  He has prior work history as a Burn Table Operator and Supervisor.  AR at 298–99.  He alleges disability based on (1) cervical stenosis with myelopathy; (2) walking at 50%; (3) loss of muscle movement; (4) neuropathy in both hands and both feet; and (5) muscle spasms. AR at 298.

///

///

---

[2] Accordingly, Plaintiff was considered a "younger person" on his alleged onset date and at the hearing. AR at 27, 54; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "under age [fifty]"); 20 C.F.R. § 416.963(c).

### III.

### **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months.  42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 404.1520.  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.[3]

(4) Is the claimant capable of performing work she has done in the past?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

---

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. § 404.1520(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Ford, 950 F.3d at 1148; Bustamante, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, accounting for the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at 721.

## IV.

## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since May 1, 2020, the alleged onset date." AR at 19.

### B. STEP TWO

At step two, the ALJ found Plaintiff has the following severe impairments; (1) "degenerative disc disease of the cervical spine"; (2) "status post anterior fusion"; (3) "cervical myelopathy"; and (4) "peripheral neuropathy." AR at 19.

### C. STEP THREE

At step three, the ALJ concluded Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." AR at 22.

///

///

///

4

**D.  RFC DETERMINATION**

The ALJ found that Plaintiff had the RFC "to perform sedentary work[4]," with the following limitations:

> [C]an lift and/or carry no more than 10 pounds; stand and/or walk for two hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; occasionally push and/or pull within the weight limits indicated for lifting and carrying with the bilateral upper extremities; occasionally reach overhead with the bilateral upper extremities; frequently perform fine and gross manipulations with the bilateral upper extremities; occasionally balance, stoop, kneel, and crouch; never crawl; avoid concentrated exposure to extreme cold and vibration; avoid any exposure to uneven terrain and hazards, such as heavy moving machinery and unprotected heights; and use of a cane to ambulate.

AR at 22.

**E.  STEP FOUR**

At step four, the ALJ found Plaintiff is unable to perform his past relevant, medium to heavy simi-skilled to skilled work as; (1) flying shear operator ((Dictionary of Occupational Titles ("DOT") code 615.682-010); (2) fluid jet cutter operator (DOT code 699.382-010); (3) material handler (DOT code 929.687-030); and (4) industrial truck operator (DOT code 921.683-050).  AR at 36.

**F.  STEP FIVE**

At step five, the ALJ found that, "considering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  AR at 36.  With the assistance of the Vocational Expert's ("VE") testimony, the ALJ found Plaintiff would be able to perform

---

[4] "Light work" is defined as:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a)

occupations such as; (1) Document Preparer, microfilming, DOT code 249.587-018; (2) Telephone solicitor, DOT code 299.357-014; and (3) Order clerk, food and beverage, DOT code 209.567-014.  AR at 37.  Accordingly, the ALJ concluded Plaintiff "has not been under a disability, as defined in the Social Security Act [("SSA")], from May 1, 2020, through the date of this decision."  AR at 38.

**V.**

**PLAINTIFF'S CLAIMS**

Plaintiff presents two disputed issues: (1) whether the ALJ failed to properly consider Plaintiff's subjective statements in the crafting of Plaintiff's RFC; and (2) whether the ALJ erred in step five by basing their analysis on defective vocation evidence.[5]  Dkt. No. 9 at 3 at 19.

**VI.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  It is more than a scintilla but less than a preponderance.  Id.  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick, 157 F.3d at 720; see also Hill v. Astrue,

---

[5] The Court finds the first issue dispositive of this matter and thus declines to address the remaining issues.  See Hiller v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'." (quoting Robbins, 466 F.3d at 882)).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

The reviewing court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination."  Robbins, 466 F.3d at 885 (citation omitted).

## VII.

## DISCUSSION

**A.    THE ALJ FAILED TO PROVIDE SUFFICIENT REASONS FOR DISCOUNTING PLAINTIFF'S SUBJECTIVE COMPLAINTS**

**1.    Relevant facts**

**a.    Plaintiff's subjective complaints**

**1)    September 2022 Disability Questionnaire**

In Plaintiff's September 2022 Disability Questionnaire, Plaintiff asserted he cannot stand more than ten to fifteen minutes due to pain.  AR at 324.  After standing he has to sit or lay down "because [he] get [sic] dizzy, weak & perspiration."  Id.  After walking from his bed to the kitchen or bathroom he has "issues."  Id.  When he walks he walks slowly, and it is very painful.  Id.  Plaintiff states he can walk up a flight of stairs, but it is very painful and he feels weak.  AR at 324–325.

Plaintiff explained he does not lift many things. AR at 325. He attempted to pick up his five-year-old son, and it was very strenuous. Id. This resulted in pain in his shoulder and back. Id. He also does not carry much due to a lack of feeling in his hands. Id. When he does carry light things, he is cautious as he can become off balance and drop the item. Id.

Plaintiff does not feel comfortable driving due to leg spasms. Id. So, he only drives a couple miles to pick up his kids from school and in emergencies. Id. Plaintiff asserts he can assist with few chores before he begins to feel weak and is in pain. Id. at 326. Plaintiff sleeps five to six hours a night and takes two to three hour long naps a day. Id.

When given a list of assistance devices Plaintiff indicated he uses a cane for leverage and balance but did not indicate he used a splint, brace, crutch, or wheelchair. Id.

Plaintiff attached a letter to the questionnaire. AR at 327–332. In his letter he discusses how the lack of feeling in his hands makes it difficult to type or write. AR at 328. He also mentions how his limitations have made him feel depressed and he "shut[s] down mentally." Id.

Plaintiff discusses an attempt to go with Knotts Berry Farm with his family. AR at 329. He used a wheelchair for the day, but there was segment he had to stand for half an hour. Id. Standing caused excruciating pain and he broke down. Id. After this the family departed the park. Id.

Plaintiff indicates he attempted to go grocery shopping using a motorized cart but was in pain due to his attempts to reach items and getting up and down. AR. at 330. He further discusses that he is depressed most days because of his physical limitations. AR at 330–32.

///

///

///

8

### 2) February 2024 hearing

At the February 2024 hearing, Plaintiff testified as follows. Plaintiff has cervical myelopathy and has symptoms that go from his neck down his arms. AR. at 59. He has had surgery, but issues persist. AR at 59–60. Plaintiff was placed on medical leave from his job and ultimately stopped working in May of 2020. AR at 55. He attempted to sign up for temporary work, but his doctor limited him from doing "[j]ust about everything. AR at 55–56.

Plaintiff has issues walking. AR at 60. He takes his children to and from school once or twice a week. AR at 57. He needs to use a cane to walk short distances and a wheelchair for long distances. AR. at 58. He can stand about five to ten minutes before he starts "getting wobbly." AR at 59.

Plaintiff has arm pain in both arms, but his left arm is worse. AR at 60. He also has weakness in his arms and can only pick up five to ten pounds. Id. However, he would be unable to move five to ten pounds every fifteen minutes due to both weakness and pain. AR at 61. Plaintiff also cannot fully extend his left arm. AR at 62.

Plaintiff asserts he has difficulties around people and is seeing someone to talk about his depression and anxiety. AR at 64. He socializes with friends over the phone, and when they come over. AR at 65.

### b. ALJ's decision

The ALJ found that the claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 27. However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" inconsistent with the record. AR at 27–28.

In discussing a visit to an amusement park the ALJ noted the medical records did not indicate he used a wheelchair. AR at 30 citing AR at 1169. This activity, combined with Plaintiff's report he could walk up and down the stairs, resulted in the ALJ rejecting the assertion Plaintiff required the use of a wheelchair. AR at 30.

///

9

## 2. Applicable law[6]

When a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).

"If the ALJ's . . . finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489. Moreover, as mentioned, a court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630. Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only

---

[6] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020); see also R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating SSR 16-3p "implemented a change in dictation rather than substance").

consider the reasoning actually given by the ALJ.  See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts . . . [and] may not take a general finding . . . and comb the [AR] to find specific conflicts." (citation omitted)).

Finally, even if an ALJ errs in assessing subjective complaints, the decision will be affirmed where such error is harmless, such that it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted); Smith, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless").  In that regard, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are valid.  See Bray, 554 F.3d at 1227; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

### 3.      Lack of objective medical support

The ALJ improperly found Plaintiff's subjective complaints were inconsistent with the medical record.  An ALJ may not discredit testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722 (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)). "Rather, the ALJ must identify what testimony is not credible and what evidence undermines [the plaintiff's] complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that Plaintiff's subjective complaints were "disproportionate" and not entirely consistent with the record.  AR at 27.  Regarding Plaintiff's allegations related to his anterior cervical discectomy and fusion, the ALJ asserted that the postoperative objective medical evidence is inconsistent with and does not support the limitations and functioning Plaintiff alleges.  AR at 28.

11

The ALJ noted Plaintiff's records showed both "intermittent findings demonstrating" difficulty ambulating and some ability to walk with a normal gait. Id. The ALJ noted that although the record supports Plaintiff's use of a cane as an assistive device, Plaintiff's claim that he needs a wheelchair for long distances is not supported by the record. AR at 30. To support this determination, the ALJ cited Plaintiff's visit to an amusement park with no mention of using a wheelchair, and his ability to walk up and down the stairs. Id. Further, the ALJ found Plaintiff's allegations of arm weakness and difficulty reaching were not as severe as Plaintiff alleged. AR at 28–29. To support this finding the, ALJ referenced findings in December 2020, November 2020, and December 2022 that Plaintiff had only mildly decreased strength in his upper extremities. Id.

While the ALJ identified parts of the medical record which did not corroborate Plaintiff's statements, the ALJ failed to provide substantial evidence for the conclusion that Plaintiff's testimony should be rejected. For example, the ALJ cited one record indicating Plaintiff was working out using a stationary bike two to three times a week. AR 30 citing AR 1180 ("stationary bike for 15 min at park; 2-3x/week"). However, a host of other reports regarding exercise indicate Plaintiff was not exercising or was doing no formal exercise. AR at 875, 886, 904, 928, 942, 976, 1175, 1191, 1197, 1202, 1211, 1217, 1223, 1229, 1235. An ALJ is not permitted to cherry pick those records which support his conclusion and ignore other similar records that undermine his conclusion. Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (finding that an ALJ erred in selectively relying on some entries in a plaintiff's records while ignoring others).

It is not clear, moreover, that the medical records cited by the ALJ actually contradict Plaintiff's subjective complaints. For example, the ALJ pointed to Plaintiff's trip to an amusement park, where Plaintiff "walked more than usual," to support the conclusion that he does not need a wheelchair over long distances. AR at 30. But evidence in the record indicates that Plaintiff did use a wheelchair at the amusement

park, with the exception of one thirty-minute period when a wheelchair was supposed to be, but was not, provided in an elevator, resulting in "excruciating pain" that forced Plaintiff and his family to leave the park.  Compare AR at 329; 1169.  AR at 329.  The later medical record describing Plaintiff's increased pain from "walk[ing] more than usual" at the theme park is silent as to whether Plaintiff used a wheelchair at the park, and does not contradict Plaintiff's assertion that he is unable to walk long distances.  AR at 1169.

Finally, a lack of supportive objective medical evidence, alone, is not a sufficient basis to support the ALJ's discounting of Plaintiff's subjective complaints.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); Rollins v. Massanari, 261 F.3d 853, 856–57 (9th Cir. 2001) (same); Dschaak v. Astrue, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's [adverse subjective testimony] determination could not rely solely on conflicts with the medical evidence.").  As discussed below, the ALJ did not provide another valid reason to reject Plaintiff's allegations regarding his symptoms and limitations.  As such, even if the ALJ's construction and consideration of the medical record was fair, lack of medical evidence supporting Plaintiff's testimony, alone, would not be a proper basis for rejecting his subjective complaints.  Thus, the ALJ's purported reason, that Plaintiff's subjective complaints were "inconsistent" and "disproportionate" to the medical record, does not constitute a "specific, clear, and convincing reason" for discounting the testimony.  See Lambert v. Saul, 980 F.3d 1266, 1277.

///
///
///
///
///

#### 4.    Daily activities

##### a.    Additional relevant law

The performance of daily activities may be grounds for rejecting subjective symptom testimony if (1) the activities are inconsistent with a plaintiff's testimony about his symptoms or (2) the ALJ makes specific findings relating to the daily activities and their transferability to a work setting.  Orn, 495 F.3d at 639.  However, an ALJ must be cautious in concluding that daily activities are inconsistent with testimony about symptoms, because "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  Garrison, 759 F.3d at 1016; see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted).

##### b.    Analysis

This Court cannot conclude that the ALJ's finding that Plaintiff's testimony regarding his daily activities is inconsistent with his subjective complaints was a specific, clear, and convincing reason to reject his symptom testimony.

Here, the ALJ found that Plaintiff's "daily activities are inconsistent with the [Plaintiff's] statements about the intensity and persistence of symptoms."  AR at 30.  The ALJ explained that the amusement park trip, stationary bike use, Plaintiff's ability to drive, to take his children to and from school at times, and to socialize with friends over the phone show Plaintiff is not as limited as he alleges.  Id.  However, "disability claimants should not be penalized for attempting to lead normal lives in the face of

14

their limitations." Reddick, 157 F.3d at 722. It is unclear how occasionally performing chores, driving, and socializing with others over the phone are relevant to any difficulty Plaintiff has performing daily physical activities and working. See Vertigan, 260 F.3d at 1050 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Furthermore, the ALJ appears to have mischaracterized Plaintiff's testimony. While Plaintiff indicated he drives, he testified he would drive the children to school "[m]aybe once or twice" a week. AR at 57. Plaintiff indicated he does not usually go to the grocery store, and that when he attempted to do so, "it didn't end up well." AR at 64. The ALJ failed to mention the numerous limitations and impediments Plaintiff testified about facing in attempting to complete basic day-to-day activities. See Garrison, 759 F.3d at 1016 (finding the ALJ mischaracterized a plaintiff's testimony when the plaintiff "repeatedly emphasized" she received significant assistance in performing daily tasks; was "regularly prohibited" from completing activities, like doing laundry, because they were too painful; and needed to rest after performing daily activities). Viewed in the context of the entire record, Plaintiff's daily activities—which he struggles to complete and leave him significantly fatigued and out of breath, even with breaks—are consistent with his testimony that he is extremely limited in his mobility and self-sufficiency. See id. (finding plaintiff's "ability to talk on the phone, [cook] once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day" was "consistent with an inability to function in a workplace environment").

Ultimately, the ALJ erred, both by failing to make specific findings relating to the transferability of Plaintiff's daily activities to a work setting and by mischaracterizing the record regarding Plaintiff's daily activities. See Ellen G. v. Saul, 404 F. Supp. 3d 1261, 1267 (C.D. Cal. 2019) (rejecting ALJ's reasoning because it was based on a

15

mischaracterization of the record); see also Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. .") (citations omitted).

### 5. Harmlessness

#### a. Applicable law

Finally, the ALJ's error in rejecting Plaintiff's subjective complaints is not harmless. A decision of the ALJ will not be reversed for errors that are harmless. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch, 400 F.3d at 679). However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." Id. at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. Id. at 1055.

#### b. Analysis

Here, the ALJ's opinion that Plaintiff could work and was not disabled necessarily relied on the ALJ's rejection of Plaintiff's allegations regarding the limiting effect of his impairments. Therefore, this Court cannot conduct a meaningful review of the ALJ's reasoning, and the cannot find the ALJ's improper analysis of Plaintiff's subjective complaints was harmless. See Brown-Hunter, 806 F.3d at 492–93 (ALJ's failure adequately to specify reasons for discounting claimant testimony "will usually not be harmless").

///

///

///

///

///

///

## VIII.

## <u>RELIEF</u>

**A.    APPLICABLE LAW**

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  <u>Hill</u>, 698 F.3d at 1162 (citation omitted).  "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed'."  <u>Id.</u> (citation omitted).  "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."  <u>Id.</u>; <u>see also</u> <u>Reddick</u>, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that [c]laimant is entitled to benefits.").

**B.    ANALYSIS**

Here, remand for further proceedings is warranted.  The ALJ's assessment of Plaintiff's subjective complaints about his symptoms and limitations is intertwined with their consideration of the medical evidence and ultimately the fashioning of the RFC. Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record."  <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 495; <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1115–16 (9th Cir. 2003).

///

///

///

///

///

///

///

17

## IX.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order. **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated:  March 6, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

18